UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MATTHEW JACOBI STEWART,

        Plaintiff,                        Case No. 2:25-cv-33

v.                                                   Honorable Paul L. Maloney

SARAH SCHROEDER et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

**Discussion**

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and the following MBP correctional and medical staff: Warden Sarah Schroeder; Lieutenant Unknown Arsenault; Sergeant Unknown Peterson; Registered Nurses Kelly Suvanto, Michael Grant, Katherine Dow, Jessica Wright, and Gabriel Hacker; and Correctional Officers Unknown Parties, named as John Does #1–5. (Compl., ECF No. 1, PageID.1, 2–4.)

In Plaintiff's complaint, he alleges that on July 15, 2024, a "small fire" was started "two cells away" from Plaintiff's cell.[1] (*Id.*, PageID.4.) An unnamed, non-party correctional officer responded to the scene "and put the small fire out with an extinguisher." (*Id.*, PageID.5.) Shortly after the fire was extinguished, "an emergency response team arrived at the Plaintiff's cell ordering an immediate strip search without any explanation." (*Id.*) Plaintiff complied with the order, and "after the strip search, the Plaintiff was handcuffed, strapped down to a restraint chair, and wheeled to an observation cell." (*Id.*)

When Plaintiff was inside the observation cell, Defendants John Does #1–5, all of whom were members of the emergency response team, removed Plaintiff from the restraint chair and cut Plaintiff's clothes off of him. (*See id.*, PageID.3, 6.) "Plaintiff was not given a gown, sheet, nor blanket." (*Id.*, PageID.6.) Defendants John Does #1–5 then "applied fetal restraints on the Plaintiff." (*Id.*) Plaintiff states that "fetal restraints, also known as 'hog-tying,' is a procedure that involved handcuffing the Plaintiff's wrists to his waist chain, cuffing his ankles, and then drawing a chain between the ankles and waist chain until only a few inches separated his bound wrists and ankles." (*Id.*) "Plaintiff instantly fell to his side once his ankles were drawn to his waist chain," and "this placed immediate pain and discomfort on the Plaintiff's knees, since his legs were

---

[1] In this opinion, the Court corrects the capitalization, spelling, and punctuation in quotations from Plaintiff's complaint.

2

restrained at an acute angle, leaving no room for them to extend." (*Id.*, PageID.7.) Additionally, "Plaintiff could not stand at all, so this position made it impossible for him to get water, stretch, and use the toilet without feces getting on his body." (*Id.*) Thereafter, Defendants John Does #1–5 left the cell. (*Id.*) Plaintiff states that during these events, "the shift command was Defendant Arsenault . . . and Defendant Peterson," and they were "responsible for supervising the staff." (*Id.*) Plaintiff alleges that either Defendant Arsenault or Defendant Peterson, or both of them, "were a part of th[e] [emergency response team]" because "at least one person that is shift command must be a part of the [emergency response team]." (*Id.*)

Plaintiff remained "hog-tied for three days, beginning on July 15, and ending on July 18, 2024." (*Id.*, PageID.9.) Plaintiff was not "given a gown" to wear until July 16, 2024. (*Id.*, PageID.8.) Plaintiff contends that while he was "hog-tied," he "could not stand at all," and he was not "allowed to stand, stretch, or use the toilet." (*Id.*, PageID.9.) Plaintiff alleges that "a prisoner cannot remain in restraints for more than 24 hours without getting approval from the department that Defendant Washington oversees and directs." (*Id.*, PageID.8.)

At some point on July 15, 2024, Defendant Suvanto "came to examine the Plaintiff," and "Plaintiff verbally expressed his pain and discomfort that this 'position' was causing, but Defendant Suvanto ignored him, proceeded with [the] 'examination,' and left the cell." (*Id.*, PageID.9.) Defendant Grant conducted five examinations of Plaintiff from July 15, to July 16, 2024. (*Id.*) Defendant Grant "ignored [Plaintiff's] pleas for help on all five occasions." (*Id.*, PageID.10.)

Plaintiff claims that "Defendant Schroeder personally observed this excessive use of force while Plaintiff was being tortured during her daily rounds on July 16, and July 17, 2024." (*Id.*, PageID.8.) On July 16, 2024, "Plaintiff complained about the intense pain that this 'hog-tying'

3

position was causing, and Defendant Schroeder responded with, 'that's why you don't break the rules.'" (*Id.*) Plaintiff asked, "what rules did I break?" (*Id.*) In response, Defendant Schroeder stated: "You know what you did." (*Id.*)

On July 17, 2024, Defendant Dow examined Plaintiff, and "Plaintiff pleaded for help and intervention about this tortuous position and excruciating pains he was experiencing, but Defendant Dow ignored Plaintiff." (*Id.*, PageID.10.) That same day, Defendant Wright conducted three examinations of Plaintiff, and "Plaintiff expressed his extreme pains and concerns about his knees deteriorating due to being hog-tied for two days." (*Id.*) "Defendant Wright ignored Plaintiff on all three occasions." (*Id.*) Defendant Hacker examined Plaintiff a total of three times on July 17, and July 18, 2024. (*Id.*) "Plaintiff begged for medical intervention about his excruciating pains that this hog-tying position was causing," and "Defendant Hacker ignored Plaintiff." (*Id.*)

"On July 18, 2024, Plaintiff was released from fetal restraints." (*Id.*, PageID.11.) Plaintiff claims that "since then, [he] was prescribed naproxen and ibuprofen by a medical doctor for the lingering pain in his knees." (*Id.*)

At an unspecified time after the above-described events occurred, Plaintiff learned that Defendant Arsenault had written Plaintiff a misconduct ticket "alleging that Plaintiff had been 'observed adding flammable material to the fire making the fire larger' from two cells away." (*Id.*) Plaintiff claims that he "did not add to the fire, yet was found guilty." (*Id.*, PageID.11–12.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment to the United States Constitution.[2] (*Id.*, PageID.1, 12–13.) Plaintiff seeks a declaratory judgment, injunctive relief, and monetary damages. (*Id.*, PageID.14–15.)

---

[2] In this action, Plaintiff specifically identifies the Eighth Amendment claims that he intends to raise against Defendants. (*See* Compl., ECF No. 1, PageID.12–13.) Under these circumstances, the Court does not construe Plaintiff's complaint to raise any other claims against Defendants.

4

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     **Defendant Washington**

As to Defendant Washington, Plaintiff alleges that "a prisoner cannot remain in restraints for more than 24 hours without getting approval from the department that Defendant Washington oversees and directs." (Compl., ECF No. 1, PageID.8.) Plaintiff also claims that Defendant Washington created or "allowed a policy or custom to perpetuate in the [MDOC] that subjected the Plaintiff . . . to cruel and unusual punishment." (*Id.*, PageID.13, 15.)

As an initial matter, although Plaintiff alleges that "a prisoner cannot remain in restraints for more than 24 hours without getting approval from the department that Defendant Washington oversees and directs," Plaintiff alleges no facts to suggest that anyone in Defendant Washington's "department," let alone Defendant Washington, was contacted to "approve" Plaintiff's continued detention in restraints. (*Id.*, PageID.8.) Under these circumstances, Plaintiff fails to show that Defendant Washington was personally involved in, or had personal knowledge of, Plaintiff's detention in restraints in July of 2024. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Furthermore, although Plaintiff alleges in a conclusory manner that Defendant Washington created or "allowed a policy or custom to perpetuate in the [MDOC] that subjected the Plaintiff . . . to cruel and unusual punishment" (Compl., ECF No. 1, PageID.13, 15), Plaintiff fails to allege any facts to support this conclusory assertion. Indeed, Plaintiff does not even identify the specific custom or policy at issue. (*See generally id.*) Instead, Plaintiff's allegations suggest that it was the individual actions of the staff at MBP that resulted in his continued detention in restraints in July

6

of 2024, and Plaintiff alleges no facts to suggest that MBP staff were acting pursuant to any policy or custom. (*See generally id.*)

Moreover, to the extent that Plaintiff seeks to hold Defendant Washington liable due to her supervisory position, government officials, such as Defendant Washington, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

7

Here, Plaintiff fails to allege any *facts* showing that Defendant Washington encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in their conduct. And, any conclusory allegations of supervisory responsibility are insufficient to show that Defendant Washington was personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state any claim against Defendant Washington upon which relief may be granted. Therefore, Defendant Washington and all of Plaintiff's claims against her will be dismissed for failure to state a claim.

### B.     Defendants Schroeder, Arsenault, Peterson, Suvanto, Grant, Dow, Wright, Hacker, and John Does #1–5

With respect to the remaining Defendants—Defendants Schroeder, Arsenault, Peterson, Suvanto, Grant, Dow, Wright, Hacker, and John Does #1–5—Plaintiff raises Eighth Amendment claims against these Defendants. (*See* Compl., ECF No. 1, PageID.12–13 (setting forth Plaintiff's Eighth Amendment claims against Defendants).) At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Under these circumstances, the Court will not dismiss Plaintiff's Eighth Amendment claims against Defendants Schroeder, Arsenault, Peterson, Suvanto, Grant, Dow, Wright, Hacker, and John Does #1–5 on initial review. (*See id.*); *see also supra* Part I (setting forth the factual allegations in the complaint).

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendant Washington will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Plaintiff's Eighth Amendment claims against Defendants Schroeder, Arsenault, Peterson, Suvanto, Grant, Dow, Wright, Hacker, and John Does #1–5 remain in the case.

An order consistent with this opinion will be entered.

Dated:   April 18, 2025                                                  /s/ Paul L. Maloney
                                                                                    Paul L. Maloney
                                                                                    United States District Judge